## HOFFMAN v HOFFMAN

Ohio Common Pleas, Summit Co

Decided Feb 2, 1939

Brouse, McDowell, May & Bierce, Akron, for plaintiff.

Weick, Powers & Mason, Akron, for defendant.

## OPINION

By HUNSICKER, J.

The plaintiff's petition is for divorce and alimony. She has obtained service by publication on her husband, the defendant, Robert W. Hoffman. The Metropolitan Life Insurance Company and the Prudential Insurance Company of America were made parties defendant to the action under the provisions of §11995, GC. The property sequestered is adequately described in the petition as a policy of insurance issued by each of the separate defendants, to the said Robert W. Hoffman. With the filing of the petition, the injunctive process of the court issued thereon, as prayed for.

Each of the defendant insurers was served with summons and notice of the granting of the restraining order, pending the final determination. Each has filed an answer in this action, admitting the fact of the issuance to the defendant, Robert W. Hoffman, of a policy of insurance. Each of the said defendant insurers is interested only to the extent of being properly protected by any order which the court. may issue herein. The claim of each may, therefore, be stated as a challenge in respect to the power of this court over these policies of insurance, in the absence of personal service upon the defendant, Robert W. Hoffman.

The submission of the case, therefore, assumes two aspects. First, the relief to which the plaintiff may be entitled as against her derelict husband; and second, the extent of the power of the court over the property here sequestered.

The evidence shows that the defendant, Robert W. Hoffman, on December 28, 1930, deserted the plaintiff and their infant child then of the age of fifteen years. He has ever since concealed his whereabouts. He

has during all of this time wholly failed to support and maintain either the plaintiff, or their said minor child. At the time of his leaving, there were some unpaid debts owing by him, part of which the plaintiff thereafter paid. The plaintiff's testimony showed that by her own efforts and by her own earnings, she supported not only herself, but their minor child, and that the reasonable cost of maintaining and supporting the said child would average about $500 per year.

She prays for an absolute divorce from the defendant. on the grounds of extreme cruelty and gross neglect of duty. The court finds that both of these █ grounds are adequately sustained and that she is entitled to an absolute divorce from the defendant. The court also finds that she is entitled to an award of alimony in the sum of $2,500, although personal judgment cannot be entered for this sum.

Coming now to the power of the court to adjudicate in respect to the two policies of insurance, the evidence in respect thereto shows that at the time of the abandonment of the plaintiff by the defendant, Robert W. Hoffman, he had these two policies in question. That both of these policies named the plaintiff as the beneficiary. He did not take them with him, but left them in the possession of the plaintiff. The plaintiff has retained these policies ever since. She has produced them in court and has offered them as exhibits. He made no effort to pay any subsequent premiums thereon. All of these subsequently accruing premiums which were paid, were paid by the plaintiff and we have here a situation which justifies the court in finding that the defendant abandoned all interest which he might otherwise have claimed in and to these policies.

There is no question in the mind of the court but that these policies of insurance are "property" within the █ purview of §§11990, 11991, 11995, 11984 and 11292, GC, █ subsections 7 and 9. Property, as referred to in these sections, is a broad term and includes all forms of property known to the law, whether tangible or intangible.

It may be difficult to decide whether these policies of insurance are to be classed as tangibles or intangibles. In the sense that the policies are physical and represent rights. they may perhaps be classed as tangibles. On the other hand, if considered only as evidence of rights, rather than the rights themselves, they are intangible.

However, the distinction is not important.

The issuance of the restraining order at the time of the filing of the petition, followed by the issuance and return of summons on each of the separate insurers, showing the allowance of this order, and the process by publication had on the defendant Robert W. Hoffman, which publication describes these policies, as well as the fact that the injunctive process had issued at the time of the filing of the petition, is a sufficient seizure of █ the property to give this court jurisdiction over the res and to give this court the power to adjudicate the rights of the parties therein, as a proceeding in rem, whether the seizure be of either tangible or intangible property.

The extent to which relief may be granted, in this situation, has never been directly decided by the Supreme Court of this state. However, very similar situations appear in C. & B. Transit Co. v Beeman, 12 C.C. (N.S.) 460; affirmed in 81 Oh St 509, and in Pennington v Fourth National Bank, 92 Oh St 517, which was reviewed by the Supreme Court of the United States and reported in 61 L. Ed. 713; 243 U. S. 269; 37 Sup. Ct. 282.

Both of these cases involved intangible personal property. The Beeman case involved among other property, sequestered shares of the capital stock of a corporation. The Pennington case involved a bank account. In both of these cases it was held that by making the corporations parties defendant to the action and by the issuance of the court's injunctive process, there was a sufficient seizure of the property by the court, to enable the court to make complete disposition of the property thus sequestered, by awarding the same to the plaintiff as alimony, both being divorce cases.

It was suggested in oral argument that it is only where there is money presently due from a third party to the defendant in the divorce action, that the court may seize and make disposition of the credit or property involved. Of course, it will be observed that this rule was not applied in the Beeman case. A share of stock is property, but it is not a direct obligation for the payment of money at any time. The dividends which may be declared thereon constitute the only money which ever will be paid thereon, except in case of dissolution, in which case the amount payable is entirely unascertained and contingent.

This is not the rule, however under the sections of the General Code of the State of Ohio relating to divorce, and alimony, since as hereinabove indicated, the term used throughout these statutes is "prop-

erty," which as above pointed out is an all-inclusive term.

The policies of insurance here involved create a money obligation due to the defendant, Robert W. Hoffman, either during his lifetime, or at his death, payable to either his estate or a designated beneficiary. The policy of the Metropolitan Life Insurance Company is fully paid. It has a cash surrender value presently available to the defendent, Robert W. Hoffman, upon surrender of the policy. At his death, it becomes an absolute agreement to pay the face thereof. In this situation, the policy in no wise differs from a promissory note due and payable in the future. Both ultimately must be paid to someone.

These are two Ohio cases which further shed some light on the question involved. They are **Greenlee v New York Life Ins. Co., 9 Abs 331 and Faulks v Faulks, 49 Oh Ap 291, 3 O.O. 207.**

The first case involved service by publication; the second, personal service on the defendant. In the Greenlee case the Common Pleas Court made an award, on service by publication, to the wife and made the amount thereof a lien upon the policy of life insurance of the defendant-husband. The plaintiff-wife had the case reviewed by the Court of Appeals, claiming that the court should have ordered the payment of the cash surrender value to her. A reading of the decision leaves the matter of whether the policy there involved had a cash surrender value somewhat in doubt. However, this may be, the Court of Appeals refused to extend the ruling of the Common Pleas Court fixing a lien of the award of alimony on the policy there involved.

The court is of the opinion that, if a policy of insurance is res, properly before the court, sufficiently to affix a lien in favor of the plaintiff thereon, it must follow that it is sufficiently before the court to grant any further relief which the court may feel necessary, and that a court may in such case completely bar a defendant-husband from all further right, title or interest in and to the same, and may judicially decree all of his interest in and to such policy to the plaintiff. It would seem to follow that if the court has one power, it has equally the other.

Of course, the decree of the court could not defeat the rights of third persons, which may have intervened prior to the sequestration of the property by the court, such as a previous change of beneficiary, an assignment, hypothecation or pledge thereof on the part of the defendant. In this case there are no such intervening third rights,

and such a result can not subsequently occur by reason of the fact that a policy of insurance is non-negotiable, and by reason of the fact that the defendant has not the possession of the policy, which the terms of the policy itself require to effect any such purpose.

The Faulks case is not material here, except insofar as it holds that a court, on personal service, may order a defendant to make an election to receive the cash surrender value of his policy of life insurance and to cause the sum so received to be paid to the wife, as alimony. It, therefore, suggests a situation where the court has made an order, and the defendant fails to comply therewith. It can scarcely be doubted that an order of such a character need not be enforced by contempt proceedings. The court in such a situation may follow the usual procedure of entering an order requiring the defendant to comply therewith within a given number of days, and in default of compliance, that then the decree, itself, shall operate to effect the purpose.

The rule that a decree of the court, by appropriate language, will operate as a transfer of a defendant's interest in property properly before the court, is not limited to cases where personal service has been had. It applies, as well, in all proceedings in rem. The court, therefore, feels that it has the power to enter an order in this action, transferring all of the defendant's interest in and to these policies of insurance, to the plaintiff, and barring the defendant from hereafter asserting or claiming any further right, title or interest in or to the same, either as against the plaintiff, or the defendant insurer.

No prejudice can result to the insurers, since all of the terms, provisions and conditions contained in these policies will remain unaltered and the liability of these insurers thereon unchanged, except only that any obligation contained in these policies to the defendant, Robert W. Hoffman, by these insurers, will be due and owing to the plaintiff in this action.

The court is of the further opinion, that each of the defendant insurers in this action will be adequately protected by the order and judgment of this court, in accordance with the decision of the Supreme Court of the United States in Pennington v Fourth Natl. Bank, 243 U. S. 269, 61 L. Ed 713; 37 Sup. Ct. 282, affirming 92 **Oh St. 517; Sanders v Armour Fertilizer Works, 78 L. Ed. 1206, 292 U. S. 282, 54**

Sup. Ct. 692; Harris v Balk, 49 L. Ed. 1023, 198 U. S. 215, 25 Sup. Ct. 625.

Where the property of a non-resident defendant has been properly sequestered and disposition has been made thereof by the court, the judgment so entered by the court becomes res adjudicata. Such judgment is within the full faith and credit clause of Article IV, Section 1 of the Constitution of the United States and is a complete bar to any subsequent action, which may be brought by owners of such property. This was the precise holding by the Supreme Court of the United States in the Pennington case, as well as in the Harris case, hereinabove referred to.

The court, in this action, will therefore order as a part of the award for alimony to the plaintiff in this action, all of the right, title and interest in and to these policies now held by the defendant, Robert W. Hoffman, barring the defendant from claiming any further interest therein, as against either the plaintiff, or the insurer-defendants herein, and giving to the plaintiff the right to exercise any and all of the options, rights and privileges in each of said policies contained, on the same conditions, terms and to the same extent as might the said defendant, Robert W. Hoffman.